David E. Leta (USB #1937)
Andrew V. Hardenbrook (Arizona Bar # 025518)
*Pro hac vice application pending*
**SNELL & WILMER L.L.P.**
15 W. South Temple, Suite 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900
Facsimile:  (801) 257-1800
Email: dleta@swlaw.com

*Proposed Counsel for Federal Resources Corporation*

---

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re **FEDERAL RESOURCES CORPORATION**,<br><br>Debtor. | Bankruptcy Case No. 14-33427<br><br>(Chapter 11) |

**DECLARATION OF DAVID E. LETA IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SNELL & WILMER L.L.P. AS COUNSEL FOR THE DEBTOR**

---

COMES NOW David E. Leta and states as follows:

1.       I am a partner with the law firm of Snell & Wilmer L.L.P. ("Snell & Wilmer"), which maintains offices in Phoenix and Tucson, Arizona; Salt Lake City, Utah; Denver, Colorado; Los Angeles and Costa Mesa, California; Las Vegas and Reno, Nevada; and San Jose del Cabo, Mexico.

19813621

2.      Snell & Wilmer, its partners, associates, and paraprofessionals, are experienced in matters of bankruptcy, insolvency, corporate reorganization and debtor/creditor law, and in the representation of debtors, creditors, creditors' committees and trustees in cases under the Bankruptcy Code and are well qualified to provide legal representation in the above-captioned case.

3.      On December 29, 2014, (the "Petition Date"), Federal Resources Corporation ("Debtor") filed its voluntary petition for relief under Chapter 11, Title 11, of the United States Code.

4.      This Declaration is submitted in support of the "Application for Order Authorizing the Employment and Retention of Snell & Wilmer L.L. P. as Counsel for the Debtor" (the "Application") filed concurrently herewith.

5.      Subject to approval by the Court, and in accordance with Sections 330 and 331 of the BANKRUPTCY CODE, compensation to Snell & Wilmer shall be based on its standard hourly rates for professional services and reimbursement of those costs and other expenses for which the firm typically seeks reimbursement, including, among other things, telephone and telecopier toll charges, express mail and mass mail postage charges, special or hand-delivery charges, photocopying charges, scanning charges, travel expenses, expenses for computerized research, transcription costs, as well as non-ordinary overhead expenses.

6.      Snell & Wilmer will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to the firm's other clients and as is customary for law firms providing similar services in the Utah market.

7.      The attorneys that may be designated to represent the Debtor and their current, standard hourly rates include:

      a.      David E. Leta          $550.00 per hour

      b.     Andrew V. Hardenbrook    $350.00 per hour

These hourly rates are subject to periodic adjustment to reflect economic and other conditions, as well as counsel's experience and expertise in this area of law. In addition to those identified above, other attorneys and paralegals employed by Snell & Wilmer may from time to time serve the Debtor in connection with the matters herein described. Snell & Wilmer will make periodic applications for interim compensation, and upon the completion of the case, application for final compensation. In this case, Snell & Wilmer has agreed to not make any adjustment in its standard hourly rates after the Petition Date until January 1, 2016.

8.      No agreement exists between Snell & Wilmer or any other person for the sharing of compensation to be received by Snell & Wilmer in connection with services rendered in this case.

9.      To determine whether Snell & Wilmer has any connections with the Debtor, United States Trustee, or any creditors, I reviewed Snell & Wilmer's records and assembled other pertinent information, including a search using Snell & Wilmer's computerized conflict check system. In particular, I directed that a search of the Debtor, the United States Trustee's Office, and all creditors listed by the Debtor, be conducted. The entities searched are listed on the attached Exhibit "A." As additional information becomes available in this case, Snell & Wilmer will update its conflicts search to include other parties who may have an interest in this proceeding, and will file a supplemental declaration revealing the results of these additional conflicts searches.

10.     Based on these search results, Snell & Wilmer does not have any prior or current relationship with any of the creditors or parties-in-interest known to Snell & Wilmer at this time.

11.      In addition to Debtor, Snell & Wilmer is representing Camp Bird Colorado, Inc. ("Camp Bird"), a wholly owned subsidiary of Debtor in its concurrently filed Chapter 11 Bankruptcy proceeding.

12.      I am not aware of any claims that Debtor may have against Camp Bird, or vice versa, or any present conflicts between Debtor and Camp Bird. Both the Debtor and Camp Bird are co-defendants in certain litigation entitled *United States of America v. Federal Resources Corporation*, et al., pending in the United States District Court for the District of Idaho, case no. 2:11-cv-00127-BLW-RCT (the "Idaho Lawsuit"). To the best of my knowledge, none of the co-defendants has asserted cross-claims against other defendants in the Idaho Lawsuit, although I do not know if they intend to do so in the future, or if the assertion of any such claims would be timely and proper. Should the Debtor or Camp Bird assert or wish to assert claims against the other during this bankruptcy case, both debtors will retain separate, special counsel to pursue and defend such claims.

13.      I am informed and believe that Debtor previously guaranteed an obligation owed by Camp Bird, but that the guaranty has been released.

14.      On July 30, 2014, Snell & Wilmer received payment from Debtor, in the amount of $50,000.00 for services rendered and to be rendered for the benefit of the Debtor and Camp Bird, the co-debtor. Of the $50,000, $30,000 was allocated as a retainer for Debtor and $20,000 was allocated as a retainer for Camp Bird.

15.      I am informed and believe that Debtor obtained the funds for the retainer through a loan made to the Debtor by Bentley J. Blum, the principal shareholder of Debtor. A copy of the promissory note by the Debtor in favor of Mr. Blum is attached as Exhibit "B."

16.     Snell & Wilmer applied the following amounts against the retainer for Debtor for fees and costs for services rendered on behalf of Debtor prior to the Petition Date and through December 11, 2014: (i) $15,154.00 on August 5, 2014, (ii) $645.00 on August 13, 2014, (iii) $1,941.00 on September 15, 2014, (iv) $861.00 on October 9, 2014, (v) $1,685.00 on or about November 6, 2014, and (vi) $165.00 on or about December 11, 2014.   Snell & Wilmer also applied the following amounts against the retainer for Camp Bird for fees and costs for services rendered on behalf of Camp Bird Petition Date and through November 6, 2014: (i) $11,291.50 on August 5, 2014, (ii) $315.00 on August 13, 2014, (iii) $1,500.00 on September 15, 2014, (iv) $860.00 on October 9, 2014, and (v) $1,637.00 on or about November 6, 2014.

17.     Additionally, Snell & Wilmer applied to the retainer $3,434.00 for Debtor's and Camp Bird's Chapter 11 filing fee.  Snell & Wilmer continues to hold the balance of the retainer in its client trust account and will apply the funds to fees and expenses approved by this Court upon approval of a fee application.  Snell & Wilmer also has rendered services to the Debtor and Camp Bird after December 11, 2014 in connection with, and related to, their cases, and these services will be included in Snell & Wilmer's first fee application.

18.     Certain entities ("Lenders") have agreed to lend Debtor and Camp Bird up to $500,000 ("Administrative Expenses Loan") exclusively for payment of administrative and operational expenses of Debtor and Camp Bird associated with their bankruptcy case, including legal fees, wages, benefits, taxes, U.S. Trustee fees, license fees and the like.  Repayment of the Administrative Expenses Loan shall be provided for in the plan of reorganization as an allowed administrative expense claim under 11 U.S.C. § 503(b).  A copy of the loan agreement and note are attached collectively as Exhibit "C."

19.     Mr. Blum and his spouse, Ms. Laura Utley Blum, have personally guaranteed the payment of an additional $75,000.00 to Debtor, and with the funds in satisfaction of the guaranty to be expressly earmarked for the payment of Debtor's and Camp Bird's administrative legal fees incurred in this case. The personal guaranty shall be reduced by the amount that the Lenders advance prior to March 31, 2015, under the Administrative Expenses Loan. This guaranty is secured with a lien against the Blum's personal residence in Florida. Copies of the guaranty (and any amendments thereto) and lien are attached as Exhibit "D."

20.     Furthermore, Mr. Blum has personally guaranteed payment of the Debtor's and Camp Bird's administrative expenses and operating expenses during this case. A copy of that guaranty is attached as Exhibit "E."

21.     Mr. Blum and his spouse are represented by separate, independent counsel in connection with this matter, and have been advised by me that Snell & Wilmer's exclusive loyalty and responsibility is to the Debtor and Camp Bird.

22.     Based on the review already conducted and the information available so far, Snell & Wilmer does not and has not represented any client in connection with any transaction or litigation against the Debtor, its creditors, or any parties-in-interest.

23.     Additionally, in the ordinary course of its business, Snell & Wilmer appears in numerous cases, proceedings and transactions that involve many different types of professionals, such as attorneys, accountants and financial experts, who may represent claimants and parties-in-interest in the Debtor's case. Snell & Wilmer has in the past, may currently, and will likely in the future be working with or against other professionals involved in this bankruptcy case in matters unrelated to the Debtor's bankruptcy case.

24.     Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which Snell & Wilmer is to be employed, and none are in connection with this bankruptcy case.

25.     Given that Debtor has yet to complete its Schedules and Statement of Financial Affairs, Snell & Wilmer has not been able to finalize its review to determine if it represented past, or continues to represent certain creditors of Debtor.  However, based on the review already conducted and the information available so far, Snell and Wilmer does not and has not represented any client in connection with any transaction of litigation against Debtor, its creditors, or any party-in-interest.

26.     Additionally, Steven D. Jerome, a partner at Snell & Wilmer, in his Phoenix office is related to an analyst who is employed in the Office of the United States Trustee for the District of Arizona.  Mr. Jerome is not, and shall not, be involved in representing either the Debtor or Camp Bird in these cases, and, therefore, I do not believe that this familial relationship presents a conflict.

27.     As required under § 327(a) and as described herein, to the best of my knowledge, information, and belief pursuant to the information available, I believe that (i) Snell & Wilmer does not hold or represent an interest adverse to the Debtor, its creditors or parties in interest in this case; and (ii) it is otherwise disinterested as that term is defined in 11 U.S.C. § 101(14).  Therefore, I believe that Snell & Wilmer's retention by the Debtor under 11 U.S.C. § 327 is proper and appropriate.

28.     I will supplement and amend this Declaration should I discover any representations or connections that require disclosure in this case.

29.     I am not aware at this time of all the other attorneys and professionals who may be employed in this case.  I will supplement this Declaration with any

connections to such professionals in conjunction with its supplementation if any such contacts are discovered.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct.

DATED: December 29, 2014.

_____
David E. Leta (USB # 1937)

*Proposed Counsel for Debtor Federal Resources Corporation*

# EXHIBIT A

EXHIBIT A

ACZ Laboratories, Inc.
America/ International 1995 -Clearfork Program
America/ International 1995 ll- Sisco Program
America/ International 3 year Venture 1995 -Hockley
America/ International 1996 -Stockweather
America/ International 3 year Venture1996 -Tannerhill
America/ International 1997 -Annona
America/ International 1994 Venture I l-Fredricksburg
America/ International 1994 Venture-Ropes
America/ International 3 Year Venure 1994 Venture-Wolfacamp
Aspen Land Conservation, LLC
Aztec Energy Corporation
Baird Hanson LLP
Bentley Blum
Brian R. Hanson
Caldera Mineral Resources, LLC
Caldera Holdings, LLC
Camp Bird Colorado, Inc.
Camp Bird Tunnel Mining and Transportation Company
CC Video Production
CHH Operating Corporation
CT Corporation System
Fabian & Clendenin
Federal Resources Corporation
Garfield & Hecht, P.C.
Gordon Ripma
Gregg Rosen
Klafter & Mason, L.L.C.
McGuire Woods LLP
Mike Ramsden
Monadnock Mineral Services
Mohan R. Abraham
John Bryan, aka Anthony J.A. Bryan
Pong Tyea Tan, aka P.T. Tan
Ramsden & Lyons, LLP
Richard Klinzmann
Royal Gold, Inc.
Springfield Drilling Associates Corporation

Springfield Drilling Venture Corporation
Springfield National Oil Corporation
Springfiled Oil Venure Corporation
Sprinfield Petroleum Corp.
Springfield Petro Services Corporation
Springfield P. S. Corp.
Springfield Resource Development Corporation
United States Department of Agriculture, aka USDA
United States Department of Justice, aka U.S. Department of Justice
Utah State Tax Commission
Tanner LLC
The Watley Group, LLC
Weaver & Fitzhugh, P.C.

# EXHIBIT B

## PROMISSORY NOTE

$50,000.00                                                              Salt Lake City, Utah
July 30, 2014

**FOR VALUE RECEIVED,** the undersigned (hereinafter referred collectively as the "**Borrower**") jointly and severally, promises to pay to the order of Bentley J. Blum at 15811 Fisher Island, Miami, Florida 33109 (hereinafter referred to as the "**Lender**"), the principal sum of Fifty Thousand dollars ($50,000.00) in lawful money of the United States of America, at the time, and in the manner provided for herein.

1.      **Payments**. The unpaid balance of this Note shall be payable from the first unencumbered cash assets that become available to Borrower, other than from additional advances made by Lender hereunder, that are in excess of $300,000.00, whether such cash assets are proceeds from as sale of Borrower's assets or from loans and advances to Borrower that are made by one or more other lenders. The following additional terms shall apply to this note:

a.      *Distributions of Loan Proceeds.* Distributions by Lender to Borrower of advances hereunder may be made directly by Lender to one or more of Borrower's attorneys, employees or administrative creditors, for and on behalf of Borrower, for valid, liquidated obligations that Borrower owes to such third parties, and, when paid, shall be considered as an advance to Borrower;

b.      *Subrogation.* For every advance made by Lender to a creditor of Borrower, Lender shall be subrogated, as against Borrower, to the claim of such creditor;

c.      *Interest.* This Note shall not bear interest until October 31, 2014, and, thereafter, shall bear interest at the rate of 12% per annum until paid;

d.      *Additional Advances.* Subject to obtaining any necessary prior judicial approvals, Lender may make one or more additional advances to Borrower under the terms hereof, but interest shall not accrue on such additional advances for 90 days after the date of any such additional advance.; and

e.      *Maturity.* All obligations under this Note shall become due and payable in full, with interest, upon the occurrence of any of the following events: (a) the confirmation of a plan of reorganization in any bankruptcy proceeding filed by or against Borrower; (b) the appointment of a trustee or receiver for Borrower; (c) the conversion or filing of a cash under Chapter 7 of the Bankruptcy Code by or against Borrower; (d) the sale or all, or substantially all, of Borrowers assets; or (e) one year from the date hereof, if not sooner paid.

All payments on this Note shall be applied first to attorneys' fees and costs, if any, accrued and awarded in connection with any proceeding to enforce collection of this Note, then to interest, if any, and then to principal.

19824609

    **2.**      **Events of Default**.  Borrower shall be in default under this Note upon the happening of any of the following events:

      A.      Failure to pay this obligation, or any portion thereof, when due;

      B.      Breach of any covenant, warranty, liability or other obligation contained or referred to herein, or pertaining to the indebtedness evidenced hereby, whether now existing or hereafter arising.

    **3.**      **Prepayment**. Borrower may prepay the full unpaid balance, or any portion thereof, that is due hereunder at any time without penalty.

    **5.**      **Attorneys' Fees and Costs**. If (i) this Note is referred to an attorney for collection or enforcement, or if this Note is collected upon or enforced through any legal proceeding; (ii) an attorney is retained to represent the Lender hereof in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Note, or (iii) an attorney is retained to represent the Lender hereof in any other proceedings whatsoever in connection with this Note, Borrower agrees to pay to the Lender all reasonable attorneys' fees, costs and expenses incurred in connection therewith, both before and after judgment.

    **6.**      **No Waiver of Remedies**.  Delay in exercising any of Lender's rights or options hereunder shall not constitute a waiver thereof, and waiver of any rights or options shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

    **7.**      **Binding Effect**.  Borrower agrees that this Note shall be binding upon each of them and on their respective heirs, successors and assigns.

    **8.**      **Notice**.  Any notice to Borrower provided for in this Note, shall be given by mailing such notice by Certified Mail addressed to Borrower at the address stated below, or if no address is set forth, then the last known address of Borrower.

    **9.**      **Severability**. Should any one or more provisions of this Note be determined to be illegal or unenforceable, such provision or provisions shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and all other provisions shall nevertheless be effective.

    **10.**      **Governing Law**.  The validity, interpretation, effect and enforcement of this Note shall be governed by the laws of the State of Utah, except to the extent the laws of the United States of America may prevail, and Borrowers stipulate to the personal and subject matter jurisdiction of the Third Judicial District Court for the District of Utah, Salt Lake County Division, as the non-exclusive proper forum to enforce this obligation in the event of a default.

[this space left blank intentionally]

19824609

11.     **<u>Time of the Essence</u>**.  Time is of the essence of this Note.

12.     **<u>Headings and Captions</u>**.  The paragraph headings and captions appearing in this Note are for convenient reference only and in no respect define, limit or describe the scope of the intent of this Note or the provisions hereof.

Borrower:
Federal Resources Corporation, a Nevada corporation

Scott A. Butters

Scott A. Butters, President and sole Director
128 N. Valleyview Dr.
North Salt Lake City, UT  84054

- 3 -

19824609

# EXHIBIT C

## LOAN AGREEMENT

This Loan Agreement is made as of December 28, 2014, by and between **FEDERAL RESOURCES CORPORATION**, a Nevada corporation, with its principal place of business in North Salt Lake ("**Federal**"), and its affiliate, **CAMP BIRD COLORADO, INC.**, a Colorado corporation ("**CBC**") (collectively, "**Borrowers**"), and Lender (as defined herein) .

### RECITALS

A.    Borrowers have applied to Lender for a loan in the aggregate principal amount of Five Hundred Thousand Dollars ($500,000.00) to be used to pay administrative and operational expenses of Borrowers associated with their proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah ("**Case**").

B.    Lender has agreed to make a loan subject to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the covenants and conditions herein contained, the parties agree as follows:

### ARTICLE I
### THE LOAN

1.1    <u>Lender</u>.  The term "<u>Lender</u>" shall mean collectively those entities listed on <u>Exhibit A</u>.

1.2    <u>Loan</u>.  Subject to the terms and conditions of this Agreement, Borrowers hereby agree to borrow, and Lender hereby agrees to loan to Borrowers, the principal amount of $500,000.00 (the "<u>Loan</u>").

1.3    <u>Promissory Note</u>.  The Loan shall be separately evidenced by and subject to the provisions of a promissory note substantially in the form attached hereto as <u>Exhibit B</u> to be executed by Borrowers and delivered to Lender (the "<u>Note</u>").

1.4    <u>Use of Proceeds</u>.  Unless otherwise agreed to in writing by Lender, which consent may be given or withheld in Lender's sole discretion, Borrowers must use the Loan proceeds exclusively for payment of administrative and operational expenses of Borrowers associated with their Case, including legal fees, wages, benefits, taxes, U.S. Trustee fees, license fees and the like.

1.5    <u>Evidence of Indebtedness</u>.  The Loan shall be evidenced by the Note.  In the event of any inconsistency between the Note and this Agreement, the provisions of this Agreement shall prevail.

1.6    <u>Payment of Principal</u>.  The outstanding principal balance of the Loan and all other amounts payable by Borrowers with respect to the Note shall be due and payable in lawful money of the United States of America payable to the order of Lender in same day funds in accordance with the Note.

1.7    Prepayment of Principal.  Prepayment of the Loan shall be subject to the terms and conditions of the Note.

1.8    Loan Funding.  Lender owns certain promissory notes (the "Lender Notes") that are presently due and payable to Lender that arise under and relate to drilling programs to exploit oil or natural gas primarily located in Texas in areas previously established as having a high potential for drilling success.  The Lenders and the drilling programs under which the promissory notes were created are more particularly identified on Exhibit A.  The Lender Notes currently are being collected and enforced by James Mahon of Lawler, Mahon, & Rooney LLP, The Bar Building, 36 West 44th Street, Suite 1416, New York, NY  10036 ("Lenders' Counsel") who, as counsel for Lender under a retainer agreement, is pursuing litigation and other collection activities on behalf of Lender with respect to the Lender Notes, and who is responsible for the receipt and distribution of funds related to the Lender Notes.  Lender shall fund the Loan to Borrowers through distributions from Lenders' Counsel from twenty percent (20%) of the net proceeds otherwise distributable to Lender from funds collected by Lenders' Counsel on the Lender Notes.  Net proceeds of shall mean the total amount collected by Lender on the Lender Notes, regardless of which Lender Note is collected, less attorneys' fees and costs incurred by Lenders' Counsel in collecting on the Lender Notes.  On behalf of Lender, Lenders' Counsel shall remit twenty percent (20%) of the net proceeds to Borrowers, in care of Borrowers' counsel, Snell & Wilmer, 15 West South Temple, Salt Lake City, UT  84101 ("Borrowers' Counsel"), by wire transfer in accordance with wire transfer instructions attached as Exhibit C, within five (5) business days of collecting the net proceeds, until the Loan is fully funded.  Lender's requirement to continue to fund the Loan is subject to the condition precedent that no Event of Default has occurred and is continuing and Borrowers' compliance with the terms and conditions of this Agreement.  Borrowers' Counsel shall hold such Loan advances in trust for the benefit of Borrowers to be used exclusively for the purposes set forth in Section 1.4 above.

## ARTICLE II
## LOAN CLOSING

2.1    Conditions Precedent.  Lender's obligation to disburse the Loan and to perform the remainder of its obligations under this Agreement are expressly conditioned upon Borrowers' delivery to Lender of the following documents, in form and content satisfactory to Lender, duly executed (and acknowledged where necessary) by the appropriate parties thereto:

    (a)    this Agreement;

    (b)    the Note; and

    (c)    such other documents that Lender may reasonably require.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

3.1    Representations and Warranties of Borrowers.  In order to induce Lender to enter into this Agreement and to provide the Loan, each Borrower hereby represents and warrants to Lender as follows:

20729169

(a)   Authorization; Enforceability.  Each Borrower has full power and authority and legal capacity to enter into this Agreement, and this Agreement constitutes such Borrower's valid and legally binding obligation, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in any legal proceeding at law or in equity).  Upon the execution and delivery by each Borrower of the Note, the Note shall constitute the legal, valid and binding obligation of such Borrower, enforceable against such Borrower in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in any legal proceeding at law or in equity).

(b)   No Conflicts.  Neither the execution and delivery by each Borrower of this Agreement or the Note, nor the consummation or performance of any of the transactions contemplated hereby or thereby, shall, directly or indirectly (with or without notice or lapse of time), breach or otherwise conflict with any provision of, or give any individual, entity or governmental authority the right to declare a default or exercise any remedy under, or to accelerate the maturity or performance of, or payment under, or to cancel, terminate or modify, any contract or other agreement to which such Borrower is a party or by which such Borrower is bound.

(c)   Notices and Consents.  No Borrower is required to give any notice to, or obtain any consent or approval from, any individual, entity or governmental authority in connection with the execution and delivery by such Borrower of this Agreement and the Note or the consummation of the transactions contemplated hereby and thereby.

(d)   Compliance with Laws.  Each Borrower will comply and, to the extent it is able, will require others to comply with all laws and requirements of all Governmental Authorities having jurisdiction over its properties and will furnish Lender with reports of any official searches for violation of any requirements established by such Governmental Authorities.

3.2   Representations and Warranties of Lender.  In order to induce Borrowers to enter into this Agreement and to execute and deliver the Note, Lender hereby represents and warrants to Borrowers as follows: (i) Lender has all requisite limited liability power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and (ii) this Agreement constitutes the legal, valid and binding obligation of Lender, enforceable against Lender in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in any legal proceeding at law or in equity).

20729169

## ARTICLE IV
## EVENTS OF DEFAULT AND REMEDIES

4.1     Events of Default.   The occurrence of any one or more of the following shall constitute an Event of Default under this Agreement:

(a)     Failure by Borrowers to pay any monetary amount when due under the Note or this Agreement and the expiration of five (5) days after written notice of such failure by Lender to Borrowers.

(b)     Failure by Borrowers to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to Borrowers, under the Note or this Agreement and the expiration of ten (10) days after written notice of such failure by Lender to Borrowers.

(c)     Any representation or warranty by Borrowers in the Note or this Agreement is materially false, incorrect, or misleading as of the date made.

(d)     The occurrence of any Event of Default, as such term is defined in the Note, including, without limitation, any default in any agreement, obligation or instrument between Borrowers and any affiliate of Lender.

4.2     Remedies.  Upon the occurrence and during the continuation of an Event of Default, Lender may, at its election, without notice of its election and without demand, do any one or more of the following, all of which are authorized by Borrowers:

(a)     terminate any commitment to continue to fund the Loan;

(b)     declare all obligations, whether evidenced by this Agreement, by the Note or otherwise, immediately due and payable;

(c)     terminate this Agreement and the Note as to any future liability or obligation of Lender, but without affecting Lenders' rights hereunder and under the Notes; and

(d)     exercise any other rights or remedies available under applicable law.

## ARTICLE V
## MISCELLANEOUS

5.1     Assignment.  Borrowers shall not assign any of their rights under this Agreement, except as otherwise provided for in the Loan Documents.

5.2     Notices.  All notices, requests, demands and consents to be made hereunder to the parties hereto shall be in writing and shall be delivered by hand or sent by registered mail or certified mail, postage prepaid, return receipt requested, through the United States Postal Service to such address which the parties provide to one another in accordance herewith.  Such notices, requests, demands and consents, if sent by mail shall be deemed given two (2) Business Days after deposit in the United States mail, and if delivered by hand, shall be deemed given when delivered.

20729169

5.3    Inconsistencies with the Loan Documents.    In the event of any inconsistencies between the terms of this Agreement and the Note, the terms of this Agreement shall govern and prevail.

5.4    Incorporation of Preamble, Recitals and Exhibits.    The preamble, recitals and exhibits hereto are hereby incorporated in to this Agreement.

5.5    Disclaimer by Lender.    Borrowers are not and shall not be an agent of Lender for any purpose.  Lender is not a joint venture partner with Borrowers or with the constituent partners in Borrowers in any manner whatsoever.  Approvals granted by Lender for any matters covered under this Agreement shall be narrowly construed to cover only the parties and facts identified in any written approval or, if not in writing, such approvals shall be solely for the benefit of Borrowers.

5.6    Titles and Headings.    The headings at the beginning of each section of this Agreement are solely for convenience and are not part of this Agreement.  Unless otherwise indicated, each reference in this Agreement to a section or an exhibit is a reference to the respective section herein or exhibit hereto.

5.7    Change, Discharge, Termination, or Waiver.    No provision of this Agreement may be changed, discharged, terminated, or waived except in writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought.  No failure on the part of Lender to exercise and no delay by Lender in exercising any right or remedy under the Note, this Agreement, or under the law shall operate as a waiver thereof.

5.8    Severability and Interpretation. If one or more of the provisions of this Agreement shall be deemed to be severed from the Agreement, the validity, legality and enforceability of the remaining provisions contained herein shall not, in any way be affected or impaired thereby.  Without limiting the generality of the foregoing, any provisions herein to the contrary notwithstanding, in no event shall Lender be entitled to receive or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest, a sum greater than the maximum amount permitted by law. If any construction of this Agreement would allow Lender the right to ask for, demand or receive any greater sum as interest, as, for example, a mistake in calculation or wording, then this clause shall override and control, and proper adjustment shall automatically be made accordingly.  All references in this Agreement to the singular shall be deemed to include the plural when the context so requires, and vice versa.  References in the collective or conjunctive shall also include the disjunctive unless the context otherwise clearly requires a different interpretation.

5.9    CHOICE OF LAW.    THIS AGREEMENT AND THE TRANSACTION CONTEMPLATED HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES.

5.10    Counterparts.  This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one agreement. Delivery of an executed counterpart signature page by facsimile or electronic transmittal (PDF) is as effective as executing and delivering this Agreement in the presence of other Parties to this Agreement.

20729169

5.11   <u>Time is of the Essence</u>.  Time is of the essence of this Agreement.

5.12   <u>Attorneys' Fees</u>.  Borrowers agree to pay all costs of enforcement and collection and preparation for any Event of Default or any action taken by Lender (including, without limitation, reasonable attorney's fees) whether or not any action or proceeding is brought (including, without limitation, all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

5.13   <u>Integration</u>.  The Note and this Agreement contain the complete understanding and agreement of Borrowers and Lender and supersede all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

5.14   <u>Binding Effect</u>.  The Note and this Agreement will be binding upon, and inure to the benefit of, Borrowers and Lender and their respective successors and assigns.  Borrowers may not delegate their obligations under the Note and this Agreement .

5.15   <u>Survival</u>.  The representations, warranties, and covenants of the Borrowers and the Note and this Agreement shall survive the execution and delivery of the Note and this Agreement and the making of the Loan.

## ARTICLE VI
## EXHIBITS

The following exhibits to this Agreement are fully incorporated herein as if set forth at length:

Exhibit A – List of Lenders and drilling programs
Exhibit B – Promissory Note
Exhibit C – Wire Transfer Instructions

[SIGNATURE PAGES FOLLOW]

20729169

IN WITNESS WHEREOF, Lender and Borrowers have caused this Agreement to be duly executed and delivered as of the date first above written.

BORROWERS:

**FEDERAL RESOURCES CORPORATION**

By: *Scott A Butters*

Scott A. Butters
Its: President

**CAMP BIRD COLORADO, INC.**

By: *Scott A Butters*

Scott A. Butters
Its: President

LENDER:

**ALL ENTITIES IDENTIFIED ON EXHIBIT A:**

By:
Name: Bentley J. Blum
Title:   President and Chief Executive Officer

Acknowledgment and Acceptance with respect to Section 1.8 only:

Lawler Mahon & Rodney LLP

James J. Mahon

Snell & Wilmer L.L.P.

David E. Leta

IN WITNESS WHEREOF, Lender and Borrowers have caused this Agreement to be duly executed and delivered as of the date first above written.

BORROWERS:

FEDERAL RESOURCES CORPORATION

By: _____
    Scott A. Butters
    Its: President

CAMP BIRD COLORADO, INC.

By: _____
    Scott A. Butters
    Its: President

LENDER:

ALL ENTITIES IDENTIFIED ON EXHIBIT A:

By: _____
Name: Bentley J. Blum
Title:   President and Chief Executive Officer

Acknowledgment and Acceptance with respect to Section 1.8 only:

Lawler Mahon & Rooney LLP

James J. Mahon

Snell & Wilmer L.L.P.

David E. Leta

Exhibit "A"

# List of Lenders and Programs

| Lender - driller | PROGRAM |
|---|---|
| Springfield Resource Development Corporation | America/ International 1995 -Clearfork Program |
| Springfiled Oil Venure Corporation | America/International  1995 II- Sisco Program |
| Springfield Drilling Associates Corporation | America/ International 3 year Venture 1995 -Hockley |
| Springfield Petro Services Corporation | America/International 1996 -Stockweather |
| Springfield Drilling Venture Corporation | America/International 3 year Venture1996 -Tannerhill |
| Springfield P. S. Corp | America/International 1997 -Annona |
| Sprinfield Petroleum Corp | America/International 1994 Venture II-Fredricksburg |
| Sprinfield Petroleum Corp | America/International 1994 Venture-Ropes |
| Springfield National Oil Corporation | America/International 3 Year Venure 1994 Venture-Wolfacamp |

20733416

EXHIBIT

B

## PROMISSORY NOTE

$500,000.00                                                    December 28, 2014

1.  **FUNDAMENTAL PROVISIONS**.  The following terms will be used as defined terms in this Promissory Note (as it may be amended, modified, extended and renewed from time to time, the "Note"):

| | |
|---|---|
| **Borrowers:** | **FEDERAL RESOURCES CORPORATION**, a Nevada corporation<br><br>and<br><br>**CAMP BIRD COLORADO, INC.**, a Colorado corporation. |
| **Business Day:** | Each day of the year other than Saturdays, Sundays, Holidays, and days on which banking institutions are generally authorized or obligated by law or executive order to close in New York. |
| **Interest Rate:** | The principal balance of the Loan shall bear interest at the rate of three percent (3%) per annum. |
| **Lender:** | All entities listed on Exhibit A, attached hereto. |
| **Loan:** | The loan from Lender to Borrowers in the Principal Amount and evidenced by this Note. |
| **Loan Documents:** | The Loan Agreement, the Note and any other documents evidencing the repayment of the Note. |
| **Maturity Date:** | The earlier of either (i) the effective date of Borrowers' confirmed plan of reorganization in connection with their proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah ("Plan"), or (ii) December 31, 2017.  The Maturity Date may be extended from time to time pursuant to the terms and conditions of the Loan Documents. |
| **Principal Amount:** | Five Hundred Thousand and No/100 Dollars ($500,000.00). |

2.  **LOAN FUNDING.**  Lender owns certain promissory notes that are presently due and payable to Lender as more particularly identified in the Loan Documents ("Lender Notes").  Lender shall fund the Loan to Borrowers from twenty percent (20%) of the net proceeds Lender collects on the Lender Notes as more particularly described in Section 1.8 of the Loan Documents.

20729192

3.     **PROMISE TO PAY**.  For value received, Borrowers promise to pay to the order of Lender through Lenders' Counsel, as defined in the Loan Documents, or at such other place as the Lender hereof may from time to time designate in writing, the Principal Amount, or so much thereof that has been funded, together with accrued interest from the date of disbursement on the unpaid principal balance at the Interest Rate.

4.     **INTEREST; PAYMENTS; PREPAYMENT**.

(a)     Interest shall accrue only on the Loan proceeds that actually have been funded by the Lender.  Absent an Event of Default hereunder or under any of the Loan Documents, the Loan proceeds actually funded hereunder shall bear interest at the Interest Rate beginning on the next Business Day after the funding of those Loan proceeds.  Throughout the term of this Note, interest shall be calculated on a 365-day year for the actual number of days elapsed for any period of time.

(b)     Borrowers shall make one payment of all unpaid principal, accrued and unpaid interest, and any other amounts due hereunder due and payable on the Maturity Date (as may be extended).  If any payment of principal and interest to be made by Borrowers hereunder shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing the interest in such payment.

(c)     All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Borrowers, and (ii) without any other set off.  Borrowers will pay the amounts necessary such that the gross amount of the principal and interest received by the holder hereof is not less than that required by this Note.

(d)     Borrowers may prepay all or any portion of the principal amount of this Note bearing interest at the Interest Rate, provided that if Borrowers make any such prepayment other than on the last day of an Interest Period (whether made voluntarily or involuntarily as a result of an acceleration of the Maturity Date or otherwise), Borrowers shall also pay all accrued interest on the principal amount prepaid with such prepayment (unless less than all of the principal amount of this Note is being prepaid, in which case such interest shall be due and payable on the next scheduled interest payment date).

4.     **LAWFUL MONEY**.  Principal and interest are payable in lawful money of the United States of America.

5.     **APPLICATION OF PAYMENTS**.

(a)     Unless otherwise agreed to, in writing, or otherwise required by applicable law, payments will be applied first to accrued, unpaid interest, then to principal, and any remaining amount to any unpaid collection costs, and other charges, provided, however, upon delinquency or other default, Lender reserves the right to apply payments among principal, interest, collection costs and other charges at its

discretion.  All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion.

6.     **EVENT OF DEFAULT**.  The occurrence of any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

    (a)     default in the payment of principal or interest when due pursuant to the terms hereof and the expiration of five (5) days after written notice of such default from Lender to Borrowers; or

    (b)     the occurrence of an event of default under any of the other Loan Documents.

7.     **REMEDIES**.  Upon the occurrence of an Event of Default, then at the option of the holder hereof, the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Borrowers under the Loan Documents shall, without demand or notice, immediately become due and payable.  No delay or omission on the part of the holder hereof in exercising any right under this Note or under any of the other Loan Documents hereof shall operate as a waiver of such right.

8.     **WAIVER**.  Borrowers, endorsers, guarantors, and sureties of this Note hereby waive diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, and notice of nonpayment, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents) and expressly agree that, without in any way affecting the liability of Borrowers, endorsers, guarantors, or sureties, the holder hereof may extend any maturity date or the time for payment of any installment due hereunder, otherwise modify the Loan Documents, accept additional security, release any Person liable, and release any security or guaranty.  Borrowers, endorsers, guarantors, and sureties waive, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

9.     **CHANGE, DISCHARGE, TERMINATION, OR WAIVER**.  No provision of this Note may be changed, discharged, terminated, or waived except in a writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought.  No failure on the part of the holder hereof to exercise and no delay by the holder hereof in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

10.    **ATTORNEYS' FEES**.  If this Note is not paid when due or if any Event of Default occurs, Borrowers promise to pay all costs of enforcement and collection and preparation therefor, including but not limited to, reasonable attorneys' fees, whether or not any action or proceeding is brought to enforce the provisions hereof (including, without limitation, all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

11.    **SEVERABILITY**.  If any provision of this Note is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

- 3 -

12.   **INTEREST RATE LIMITATION**.  Borrowers hereby agree to pay an effective rate of interest that is the sum of the interest rate provided for herein, together with any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan.  Lender and Borrowers agree that none of the terms and provisions contained herein or in any of the Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of the State of New York.  In such event, if any holder of this Note shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of the maximum rate permitted to be charged by the laws of the State of New York, all such sums deemed to constitute interest in excess of such maximum rate shall, at the option of the holder, be credited to the payment of other amounts payable under the Loan Documents or returned to Borrowers.

13.   **NUMBER AND GENDER**.  In this Note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa.

14.   **HEADINGS**.  Headings at the beginning of each numbered section of this Note are intended solely for convenience and are not part of this Note.

15.   **CHOICE OF LAW**.  THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES.

16.   **INTEGRATION**.  The Loan Documents contain the complete understanding and agreement of the holder hereof and Borrowers and supersede all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

17.   **BINDING EFFECT**.  The Loan Documents will be binding upon, and inure to the benefit of, the holder hereof, Borrowers, and their respective successors and assigns. Borrowers may not delegate its obligations under the Loan Documents.

18.   **TIME OF THE ESSENCE**.  Time is of the essence with regard to each provision of the Loan Documents as to which time is a factor.

19.   **SURVIVAL**.  The representations, warranties, and covenants of the Borrowers in the Loan Documents shall survive the execution and delivery of the Loan Documents and the making of the Loan.

[SIGNATURE PAGE FOLLOWS]

20729192

**BORROWERS:**

**FEDERAL RESOURCES CORPORATION**


**By:** _____
      Scott A. Butters
      Its: President


**CAMP BIRD COLORADO, INC.**


**By:** _____
      Scott A. Butters
      Its: President

EXHIBIT "C"

LOAN AGREEMENT

Wire Transfer Instructions

Bank - JP Morgan Chase NA

Address - 201 N. Central Ave., Phoenix, AZ 85004

ABA# - 021000021

International Wires - Use SWIFT code CHASUS33

Acct # - 411-9025

Acct Name - Snell & Wilmer Trust Account

Reference Information – Federal Resources (67201.00001) and Camp Bird Corp (67200.00001) – D. Leta

# PROMISSORY NOTE

$500,000.00                                                    December 28, 2014

1.    **FUNDAMENTAL PROVISIONS**.  The following terms will be used as defined terms in this Promissory Note (as it may be amended, modified, extended and renewed from time to time, the "Note"):

| | |
|---|---|
| **Borrowers:** | **FEDERAL RESOURCES CORPORATION**, a Nevada corporation |
| | and |
| | **CAMP BIRD COLORADO, INC.**, a Colorado corporation. |
| **Business Day:** | Each day of the year other than Saturdays, Sundays, Holidays, and days on which banking institutions are generally authorized or obligated by law or executive order to close in New York. |
| **Interest Rate:** | The principal balance of the Loan shall bear interest at the rate of three percent (3%) per annum. |
| **Lender:** | All entities listed on Exhibit A, attached hereto. |
| **Loan:** | The loan from Lender to Borrowers in the Principal Amount and evidenced by this Note. |
| **Loan Documents:** | The Loan Agreement, the Note and any other documents evidencing the repayment of the Note. |
| **Maturity Date:** | The earlier of either (i) the effective date of Borrowers' confirmed plan of reorganization in connection with their proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah ("Plan"), or (ii) December 31, 2017.  The Maturity Date may be extended from time to time pursuant to the terms and conditions of the Loan Documents. |
| **Principal Amount:** | Five Hundred Thousand and No/100 Dollars ($500,000.00). |

2.    **LOAN FUNDING.**  Lender owns certain promissory notes that are presently due and payable to Lender as more particularly identified in the Loan Documents ("Lender Notes").  Lender shall fund the Loan to Borrowers from twenty percent (20%) of the net proceeds Lender collects on the Lender Notes as more particularly described in Section 1.8 of the Loan Documents.

3.   **PROMISE TO PAY**.  For value received, Borrowers promise to pay to the order of Lender through Lenders' Counsel, as defined in the Loan Documents, or at such other place as the Lender hereof may from time to time designate in writing, the Principal Amount, or so much thereof that has been funded, together with accrued interest from the date of disbursement on the unpaid principal balance at the Interest Rate.

4.   **INTEREST; PAYMENTS; PREPAYMENT**.

   (a)   Interest shall accrue only on the Loan proceeds that actually have been funded by the Lender.  Absent an Event of Default hereunder or under any of the Loan Documents, the Loan proceeds actually funded hereunder shall bear interest at the Interest Rate beginning on the next Business Day after the funding of those Loan proceeds.  Throughout the term of this Note, interest shall be calculated on a 365-day year for the actual number of days elapsed for any period of time.

   (b)   Borrowers shall make one payment of all unpaid principal, accrued and unpaid interest, and any other amounts due hereunder due and payable on the Maturity Date (as may be extended).  If any payment of principal and interest to be made by Borrowers hereunder shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing the interest in such payment.

   (c)   All payments of principal and interest due hereunder shall be made (i) without deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by Borrowers, and (ii) without any other set off.  Borrowers will pay the amounts necessary such that the gross amount of the principal and interest received by the holder hereof is not less than that required by this Note.

   (d)   Borrowers may prepay all or any portion of the principal amount of this Note bearing interest at the Interest Rate, provided that if Borrowers make any such prepayment other than on the last day of an Interest Period (whether made voluntarily or involuntarily as a result of an acceleration of the Maturity Date or otherwise), Borrowers shall also pay all accrued interest on the principal amount prepaid with such prepayment (unless less than all of the principal amount of this Note is being prepaid, in which case such interest shall be due and payable on the next scheduled interest payment date).

4.   **LAWFUL MONEY**.  Principal and interest are payable in lawful money of the United States of America.

5.   **APPLICATION OF PAYMENTS**.

   (a)   Unless otherwise agreed to, in writing, or otherwise required by applicable law, payments will be applied first to accrued, unpaid interest, then to principal, and any remaining amount to any unpaid collection costs, and other charges, provided, however, upon delinquency or other default, Lender reserves the right to apply payments among principal, interest, collection costs and other charges at its

- 2 -

20729192

discretion.  All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion.

6.   **EVENT OF DEFAULT**.  The occurrence of any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

(a)   default in the payment of principal or interest when due pursuant to the terms hereof and the expiration of five (5) days after written notice of such default from Lender to Borrowers; or

(b)   the occurrence of an event of default under any of the other Loan Documents.

7.   **REMEDIES**.  Upon the occurrence of an Event of Default, then at the option of the holder hereof, the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Borrowers under the Loan Documents shall, without demand or notice, immediately become due and payable.  No delay or omission on the part of the holder hereof in exercising any right under this Note or under any of the other Loan Documents hereof shall operate as a waiver of such right.

8.   **WAIVER**.  Borrowers, endorsers, guarantors, and sureties of this Note hereby waive diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, and notice of nonpayment, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents) and expressly agree that, without in any way affecting the liability of Borrowers, endorsers, guarantors, or sureties, the holder hereof may extend any maturity date or the time for payment of any installment due hereunder, otherwise modify the Loan Documents, accept additional security, release any Person liable, and release any security or guaranty.  Borrowers, endorsers, guarantors, and sureties waive, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

9.   **CHANGE, DISCHARGE, TERMINATION, OR WAIVER**.  No provision of this Note may be changed, discharged, terminated, or waived except in a writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought.  No failure on the part of the holder hereof to exercise and no delay by the holder hereof in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

10.   **ATTORNEYS' FEES**.  If this Note is not paid when due or if any Event of Default occurs, Borrowers promise to pay all costs of enforcement and collection and preparation therefor, including but not limited to, reasonable attorneys' fees, whether or not any action or proceeding is brought to enforce the provisions hereof (including, without limitation, all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)).

11.   **SEVERABILITY**.  If any provision of this Note is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

- 3 -

20729192

12.  **INTEREST RATE LIMITATION**.  Borrowers hereby agree to pay an effective rate of interest that is the sum of the interest rate provided for herein, together with any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan.  Lender and Borrowers agree that none of the terms and provisions contained herein or in any of the Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of the State of New York.  In such event, if any holder of this Note shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of the maximum rate permitted to be charged by the laws of the State of New York, all such sums deemed to constitute interest in excess of such maximum rate shall, at the option of the holder, be credited to the payment of other amounts payable under the Loan Documents or returned to Borrowers.

13.  **NUMBER AND GENDER**.  In this Note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa.

14.  **HEADINGS**.  Headings at the beginning of each numbered section of this Note are intended solely for convenience and are not part of this Note.

15.  **CHOICE OF LAW**.  THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES.

16.  **INTEGRATION**.  The Loan Documents contain the complete understanding and agreement of the holder hereof and Borrowers and supersede all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

17.  **BINDING EFFECT**.  The Loan Documents will be binding upon, and inure to the benefit of, the holder hereof, Borrowers, and their respective successors and assigns. Borrowers may not delegate its obligations under the Loan Documents.

18.  **TIME OF THE ESSENCE**.  Time is of the essence with regard to each provision of the Loan Documents as to which time is a factor.

19.  **SURVIVAL**.  The representations, warranties, and covenants of the Borrowers in the Loan Documents shall survive the execution and delivery of the Loan Documents and the making of the Loan.

[SIGNATURE PAGE FOLLOWS]

- 4 -

20729192

**BORROWERS:**

**FEDERAL RESOURCES CORPORATION**

By: _____

Scott A. Butters
Its: President

**CAMP BIRD COLORADO, INC.**

By: _____

Scott A. Butters
Its: President

20729192

# Exhibit "A"

# List of Lenders and Programs

| Lender - driller | PROGRAM |
|---|---|
| Springfield Resource Development Corporation | America/ International 1995 -Clearfork Program |
| Springfiled Oil Venure Corporation | America/International  1995 II- Sisco Program |
| Springfield Drilling Associates Corporation | America/ International 3 year Venture 1995 -Hockley |
| Springfield Petro Services Corporation | America/International 1996 -Stockweather |
| Springfield Drilling Venture Corporation | America/International 3 year Venture1996 -Tannerhill |
| Springfield P. S. Corp | America/International 1997 -Annona |
| Sprinfield Petroleum Corp | America/International 1994 Venture II-Fredricksburg |
| Sprinfield Petroleum Corp | America/International 1994 Venture-Ropes |
| Springfield National Oil Corporation | America/International 3 Year Venure 1994 Venture-Wolfacamp |

20733416

# EXHIBIT D

# GUARANTY AGREEMENT

This Guaranty Agreement ("Guaranty") is made as of July 29, 2014, jointly and severally by **Laura Utley**, aka Laura Utley Blum, an individual, and **Bentley J. Blum**, an individual, husband and wife, (collectively, "**Guarantors**") residing at 15811 Fisher Island, Miami, Florida 33109 (the "**Property**") to **Federal Resources Corporation**, a Nevada corporation, with its principal place of business in North Salt Lake, Utah ("**Federal**") and its affiliate, Camp Bird Colorado, Inc. ("**CBC**"), collectively ("**Debtors**") to obtain legal services in connection with proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah (the "**Case**").

Guarantors' obligations hereunder are secured by that certain lien of approximately even date herewith (the "**Security Agreement**") made by Guarantors in favor of Federal encumbering the Property.

For good and valuable consideration, receipt of which is hereby acknowledged, Guarantors agrees as follows:

1.     _Definitions_.  Terms defined in the singular shall have the same meaning when used in the plural and vice versa.  As used herein, the term:

"Collateral" means the Property.

"**Indebtedness**" means $75,000.00, U.S due in cash to Federal by Guarantors on or before September 30, 2014, the use of which exclusively shall be for the purpose of obtaining, securing and paying for legal services of Federal's bankruptcy counsel for the Debtors in the Case.  If not timely paid, the Indebtedness shall bear interest at the rate of 12% per annum until paid.  Upon payment of the Indebtedness, Guarantor shall be subrogated to the claim or claims of the Debtors' creditors that are paid with funds provided by Guarantors to the Debtors.

2.     _Guaranty_.  Guarantors absolutely and unconditionally guarantee to Federal that they shall promptly, timely and fully perform, pay and discharge the Indebtedness.  If Guarantors fail to pay any Indebtedness promptly as the same becomes due, Guarantors, and each of them, agree to pay the Indebtedness on demand.

3.     _Guaranty Unconditional_.  This Guaranty is an absolute and unconditional guarantee of payment and not of collectability.  The liability of Guarantors hereunder is not conditional or contingent upon the genuineness, validity, or enforceability of the Indebtedness or the value or sufficiency of any Collateral.

4.     _Agreement to Pay Attorneys' Fees_.  Guarantors agrees to pay all collection costs, including reasonable attorneys' fees and legal expenses, incurred by Federal in enforcing this Guaranty, including, without limitation, all reasonable attorneys' fees and legal expenses incurred by Federal in the Case in connection with enforcing this Guaranty

5.     _Waiver by Guarantors_.  Guarantors expressly and absolutely, without affecting the liability of Guarantors hereunder:

a.     Waives notice of acceptance of this Guaranty, the offer of guarantee contemplated by this Guaranty, or any other notice which may be required relative to the acceptance of this Guaranty;

b.     Waives demand, protest, notice of dishonor or nonpayment or presentment for payment of any evidence of the Indebtedness;

19808252

c.     Waives notice of transactions which have occurred under or relating to or affecting this Guaranty;

d.     Waives notice of any adverse change in the condition, financial or otherwise, of Federal, any change concerning any Collateral, or of any other fact which might materially increase Guarantors' risk, whether or not Federal has knowledge of the same;

e.     Waives any right to require Federal to (i) foreclose, proceed against, liquidate or exhaust any Collateral, or (ii) exercise, pursue or enforce any right or remedy Federal may have against any other person or entity, or otherwise, prior to proceeding against Guarantors; and

f.     Waives any and all rights of subrogation, contribution or indemnification of any nature whatsoever, now existing or hereafter arising or created.

6.     <u>Consent to Federal's Acts</u>. Guarantors hereby authorizes and consents to Federal at any time and from time to time, without notice or further consent of Guarantors, doing the following and Guarantors agrees that the liability of Guarantors shall not be released or affected by:

a.     The taking or accepting, or the failure by Federal to take or accept, any other Collateral or guaranty for the Indebtedness;

b.     The modification, amendment, extension, renewal, replacement, or termination of the Indebtedness, to the granting of any other credit, and to the acceleration of maturity of the Indebtedness;

c.     Any complete or partial release, substitution, subordination, impairment, loss, compromise, or other modification of any Collateral;

d.     The complete or partial release or substitution of any Guarantor;

e.     Any renewal, extension, modification, replacement, acceleration, consolidation, adjustment, indulgence, forbearance, waiver or compromise of the payment of any part or all of the Indebtedness;

f.     Any neglect, delay, omission, failure, or refusal of Federal to take or prosecute any action for the collection of the Indebtedness or any part thereof, or any action in connection with any Collateral, including, without limitation, the failure of Federal to perfect any security interest in any Collateral;

g.     Any increase or decrease in the rate of interest on the Indebtedness;

h.     Acceptance of any partial and/or late payments on the Indebtedness;

i.     Application of payments by, or recoveries from, the Property, or any sums realized from any Collateral, in such manner and in such order of priority as Federal deems proper, whether or not the obligation to which the payment or recovery is applied is due at the time of such application; and

j.     Federal exercising any and all rights and remedies available to Federal by law, at equity or by agreement, even if the exercise thereof may affect, modify, or eliminate Guarantors' right of subrogation against any other party.

7.     <u>Guarantors Representations, Warranties and Covenants</u>.

2

a.   Guarantors represent and warrant that all of Guarantors' financial statements heretofore delivered to Federal fully and fairly represent Guarantors' financial condition as of the date thereof. Guarantors represent and warrant that since the date of such financial statements, there has been no material adverse change in Guarantors' financial condition.

b.   Guarantors covenants that Guarantors shall provide Federal with such financial statements and reports as Federal may reasonably request and that such statements and reports shall fully and fairly represent Guarantors' financial condition.

8.    Term of Guaranty.  This Guaranty shall remain in full force and effect until all Indebtedness has been fully paid.  No termination of this Guaranty by Guarantors shall be effective.

9.    Cumulative Rights.  The rights and remedies herein conferred are cumulative and not exclusive of any other rights or remedies, and shall be in addition to every other right, power, and remedy that Federal may have, whether specifically granted herein, or hereafter existing at law, in equity, or by statute; and any and all such rights and remedies may be exercised from time to time and as often and in such order as Federal may deem expedient.  No delay or omission in the exercise or pursuance by Federal of any right, power, or remedy shall impair any such right, power, or remedy or shall be construed to be a waiver thereof.

10.   Governing Law.  This Guaranty shall be governed by and construed in accordance with the laws of the State of Utah.

11.   Binding Effect.  This Guaranty shall be binding and enforceable upon its execution and delivery to Federal.

12.   Revival Clause.  If the incurring of any debt or the payment of any money or transfer of property to Federal by or on behalf of Guarantors, or any other party, should for any reason subsequently be determined to be "voidable" or "avoidable" in whole or in part within the meaning of any state or federal law (collectively "voidable transfers"), including, without limitation, fraudulent conveyances or preferential transfers under the United States Bankruptcy Code or any other federal or state law, and Federal is required to repay or restore any voidable transfers or the amount or any portion thereof, or upon the advice of Federal's counsel is advised to do so, then, as to any such amount or property repaid or restored, including all reasonable costs, expenses, and attorneys' fees of Federal related thereto, the liability of Guarantors shall automatically be revived, reinstated and restored and shall exist as though the voidable transfers had never been made.

13.   Severability and Interpretation.  Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  The headings in this Guaranty are inserted for convenience only and shall not be considered part of the Guaranty nor be used in its interpretation.  All references in this Guaranty to the singular shall be deemed to include the plural when the context so requires, and vice versa.  References in the collective or conjunctive shall also include the disjunctive unless the context otherwise clearly requires a different interpretation.

14.   Continuing Agreement.  All agreements, representations, warranties, and covenants made herein by Guarantors shall survive the execution and delivery of this Guaranty and shall continue in effect so long as the Indebtedness or any portion thereof is outstanding and unpaid.  All agreements, representations, warranties, and covenants made herein by Guarantors shall survive any bankruptcy proceedings.  This Guaranty shall bind the party making the same and its successors, assigns, heirs, executors, and personal representatives.  The death, insolvency, bankruptcy, disability, or lack of corporate power of Guarantors, or any other person or entity at any time will not affect this Guaranty.

3

19808252

15.    Consent to Utah Jurisdiction, Exclusive Jurisdiction of Utah Courts, and Jury Waiver. Guarantors acknowledges that by execution and delivery of this Guaranty, Guarantors has transacted business in the State of Utah and Guarantors voluntarily submits to, consents to, and waives any defense to the jurisdiction of courts located in the State of Utah as to all matters relating to or arising from this Guaranty. EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL, THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF UTAH SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES, ARISING UNDER OR RELATING TO THIS GUARANTY. NO LAWSUIT, PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS GUARANTY MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL. GUARANTORS HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM, WHETHER IN CONTRACT OR IN TORT AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY.

16.    Entire Agreement.  This Guaranty, together with the Security Agreement, constitutes the entire agreement between Federal and Guarantors concerning the subject matter hereof, and may not be altered or amended except by written agreement signed by Federal and Guarantors.   All other prior and contemporaneous agreements, arrangements, and understandings between the parties hereto as to the subject matter hereof are rescinded.

17.    Counterparts.  This Guaranty may be executed by the Guarantors hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Guaranty, will be deemed an original with all such counterparts taken together constituting one and the same instrument. Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

DATED as of the day first above written.

GUARANTORS:

_____
Laura Utley, aka Laura Utley Blum

_____
Bentley J. Blum

4

15.    Consent to Utah Jurisdiction, Exclusive Jurisdiction of Utah Courts, and Jury Waiver. Guarantors acknowledges that by execution and delivery of this Guaranty, Guarantors has transacted business in the State of Utah and Guarantors voluntarily submits to, consents to, and waives any defense to the jurisdiction of courts located in the State of Utah as to all matters relating to or arising from this Guaranty. EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL, THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF UTAH SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES, ARISING UNDER OR RELATING TO THIS GUARANTY.  NO LAWSUIT, PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS GUARANTY MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL. GUARANTORS HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM, WHETHER IN CONTRACT OR IN TORT AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY.

16.    Entire Agreement.  This Guaranty, together with the Security Agreement, constitutes the entire agreement between Federal and Guarantors concerning the subject matter hereof, and may not be altered or amended except by written agreement signed by Federal and Guarantors.   All other prior and contemporaneous agreements, arrangements, and understandings between the parties hereto as to the subject matter hereof are rescinded.

17.    Counterparts.  This Guaranty may be executed by the Guarantors hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Guaranty, will be deemed an original with all such counterparts taken together constituting one and the same instrument. Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

DATED as of the day first above written.

GUARANTORS:

_____
Laura Utley, aka Laura Utley Blum

_____
Bentley J. Blum

4

## ADDENDUM TO GUARANTY AGREEMENT

THIS ADDENDUM TO GUARANTY AGREEMENT ("**Addendum**") is entered into between **Laura Utley**, aka Laura Utley Blum, an individual, and **Bentley J. Blum**, an individual, husband and wife, (collectively, "**Guarantors**") and **Federal Resources Corporation**, a Nevada corporation, with its principal place of business in North Salt Lake, Utah ("**Federal**").  This Addendum is attached to and made a part of that certain Guaranty Agreement ("**Guaranty Agreement**") made as of July 29, 2014, jointly and severally by Guarantors to Federal.    Hereinafter, Guarantors and Federal may be referred to collectively as the "**Parties**," or individually as a "**Party**."    **By signing below, the Parties all agree to be bound by the terms and conditions of this Addendum, and all Parties understand, acknowledge and agree as follows:**

The Guaranty Agreement is amended and supplemented as set forth in this Addendum:

1.     The following definition of "**Indebtedness**" shall amend and replace the definition of "**Indebtedness**" contained in the Guaranty Agreement:

"**Indebtedness**" means $75,000.00, U.S due in cash to Federal by Guarantors on or before November 30, 2014, the use of which exclusively shall be for the purpose of obtaining, securing and paying for legal services of Federal's bankruptcy counsel for the Debtors in the Case.  If not timely paid, the Indebtedness shall bear interest at the rate of 12% per annum until paid.  Upon payment of the Indebtedness, Guarantor shall be subrogated to the claim or claims of the Debtors' creditors that are paid with funds provided by Guarantors to the Debtors.

2.     As amended herein, the Guaranty Agreement shall continue in full force and effect. This Addendum shall be governed by the laws of the State of Utah.

3.     This Addendum may be executed by facsimile, e-mail, or by other means of electronic signature, and in counterparts, each of which will be an original and which taken jointly will be deemed to constitute one document.

IN WITNESS WHEREOF, this Addendum is made effective as of the same date as the Guaranty Agreement.

**FEDERAL RESOURCES CORPORATION**

By: _Scott A Butters_

Scott A. Butters
Its: President

**GUARANTORS:**

_____
Laura Utley, aka Laura Utley Blum

20362444.1

-1-

# ADDENDUM TO GUARANTY AGREEMENT

THIS ADDENDUM TO GUARANTY AGREEMENT ("Addendum") is entered into between **Laura Utley,** aka Laura Utley Blum, an individual, and **Bentley J. Blum,** an individual, husband and wife, (collectively, "**Guarantors**") and **Federal Resources Corporation,** a Nevada corporation, with its principal place of business in North Salt Lake, Utah ("**Federal**"). This Addendum is attached to and made a part of that certain Guaranty Agreement ("**Guaranty Agreement**") made as of July 29, 2014, jointly and severally by Guarantors to Federal.   Hereinafter, Guarantors and Federal may be referred to collectively as the "**Parties,**" or individually as a "**Party.**"    **By signing below, the Parties all agree to be bound by the terms and conditions of this Addendum, and all Parties understand, acknowledge and agree as follows:**

The Guaranty Agreement is amended and supplemented as set forth in this Addendum:

1.    The following definition of "Indebtedness" shall amend and replace the definition of "Indebtedness" contained in the Guaranty Agreement:

"Indebtedness" means $75,000.00, U.S due in cash to Federal by Guarantors on or before November 30, 2014, the use of which exclusively shall be for the purpose of obtaining, securing and paying for legal services of Federal's bankruptcy counsel for the Debtors in the Case.  If not timely paid, the Indebtedness shall bear interest at the rate of 12% per annum until paid.  Upon payment of the Indebtedness, Guarantor shall be subrogated to the claim or claims of the Debtors' creditors that are paid with funds provided by Guarantors to the Debtors.

2.    As amended herein, the Guaranty Agreement shall continue in full force and effect. This Addendum shall be governed by the laws of the State of Utah.

3.    This Addendum may be executed by facsimile, e-mail, or by other means of electronic signature, and in counterparts, each of which will be an original and which taken jointly will be deemed to constitute one document.

IN WITNESS WHEREOF, this Addendum is made effective as of the same date as the Guaranty Agreement.

20362444 1

FEDERAL RESOURCES CORPORATION

By: _____

    Scott A. Butters

    Its: President

GUARANTORS:

_____
Laura Utley, aka Laura Utley Blum

_____
Bentley J. Blum

-2-

20362444.1

# SECOND ADDENDUM TO GUARANTY AGREEMENT

THIS SECOND ADDENDUM TO GUARANTY AGREEMENT ("**Addendum**") is entered into between **Laura Utley**, aka Laura Utley Blum, an individual, and **Bentley J. Blum**, an individual, husband and wife, (collectively, "**Guarantors**") and **Federal Resources Corporation**, a Nevada corporation, with its principal place of business in North Salt Lake, Utah ("**Federal**"). This Addendum is attached to and made a part of that certain Guaranty Agreement ("**Guaranty Agreement**") made as of July 29, 2014, jointly and severally by Guarantors to Federal. Hereinafter, Guarantors and Federal may be referred to collectively as the "**Parties**," or individually as a "**Party**." **By signing below, the Parties all agree to be bound by the terms and conditions of this Addendum, and all Parties understand, acknowledge and agree as follows:**

The Guaranty Agreement is amended and supplemented as set forth in this Addendum:

1.      The following definition of "**Indebtedness**" shall amend and replace the definition of "**Indebtedness**" contained in the Guaranty Agreement:

"**Indebtedness**" means $75,000.00, U.S due in cash to Federal by Guarantors on or before March 31, 2015, the use of which exclusively shall be for the purpose of obtaining, securing and paying for legal services of Federal's bankruptcy counsel for the Debtors in the Case. If not timely paid, the Indebtedness shall bear interest at the rate of 12% per annum until paid. Upon payment of the Indebtedness, Guarantor shall be subrogated to the claim or claims of the Debtors' creditors that are paid with funds provided by Guarantors to the Debtors. Any funds advanced to Debtors on or before March 31, 2015 under that certain Loan Agreement dated December 28, 2014 executed by Debtors, as borrowers, and Lender (as defined therein), as lender, and that certain Promissory Note dated December 28, 2014 executed by Debtors in favor of Lender (as defined therein), shall be applied toward satisfaction of this Guaranty.

2.      As amended herein, the Guaranty Agreement shall continue in full force and effect. This Addendum shall be governed by the laws of the State of Utah.

3.      This Addendum may be executed by facsimile, e-mail, or by other means of electronic signature, and in counterparts, each of which will be an original and which taken jointly will be deemed to constitute one document.

**[Remainder of page intentionally left blank;**

**Signature page follows]**

20726946

IN WITNESS WHEREOF, this Addendum is made effective as of the same date as the Guaranty Agreement.

**FEDERAL RESOURCES CORPORATION**

By: _Scott A Butters_____
   Scott A. Butters
   Its: President


**GUARANTORS:**

_____
Laura Utley, aka Laura Utley Blum


_____
Bentley J. Blum

20726946

IN WITNESS WHEREOF, this Addendum is made effective as of the same date as the Guaranty Agreement.

**FEDERAL RESOURCES CORPORATION**

By:_____

    Scott A. Butters

    Its: President

**GUARANTORS:**

*Laura Utley*

Laura Utley, aka Laura Utley Blum
With permission:

_____

Bentley J. Blum

-2-

20726946

THIS INSTRUMENT PREPARED BY:
Marnie Dale Ragan, Esquire
Gursky Ragan, P.A.
14 NE 1st Avenue, 2nd Floor
Miami, Florida 33132

## NOTICE AND CLAIM OF LIEN

KNOW ALL MEN BY THESE PRESENTS THAT; Federal Resources Corporation, a Nevada Corporation, whose post office address is 128 N. Valleyview Drive, North Salt Lake, Utah 84054, claims this lien against the following property:

Unit No. 15811E, of SEASIDE VILLAS, A CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 13564, at Page 1125, of the public records of Dade County, Florida, together with all appurtenances thereto, including an undivided interest in the common elements of said Condominium as set forth in the above-described Declaration as amended.

**Record title to such property is currently held by Bentley J. Blum and Laura U. Blum**

**The amount due is $75,000.00,** securing the payment of the Indebtedness as defined in that certain Guaranty Agreement, dated July 29, 2014, made by Laura Utley and Bentley J. Blum in favor of Federal Resources Corporation.

Dated this 29th day of JULY 2014.

Federal Resources Corporation

WITNESSES:
Sign Name _Stephen Cole_          BY:  _Scott A Butters_
Print Name _Stephanie Cole_            _SCOTT A. BUTTERS_,
                                       Agent for Federal Resources Corporation
Sign Name _Breanna Moss_
Print Name _Breanna Moss_

STATE OF _Utah_          :
                         : ss
COUNTY OF _Davis_        :

BEFORE ME, the undersigned authority, appeared _Scott A. Butters_, as Agent for Federal Resources Corporation., **who is personally known to me** or has produced _Utah State License_ as identification, who did **(did not)** take an oath and who acknowledged before me this _29th_ day of _July_ 2014 that she executed the above Claim of Lien as such Agent of said corporation and that the same is the free act and deed of said corporation.

/s/ _Annette Westwood_
Print Name _Annette Westwood_
NOTARY PUBLIC, State of Utah

ANNETTE WESTWOOD
Notary Public • State of Utah
Commission # 674897
My Commission Expires
June 1, 2018

# EXHIBIT E

## GUARANTY AGREEMENT

This Guaranty Agreement ("Guaranty") is made as of July 29, 2014, by Bentley J. Blum, an individual, ("Guarantor") residing at 15811 Fisher Island, Miami, Florida 33109 to Federal Resources Corporation, a Nevada corporation, with its principal place of business in North Salt Lake, Utah ("Federal") to enable Federal, and its affiliate, Camp Bird Colorado, Inc. ("CBC"), collectively ("Debtors") to pay for administrative and operational expenses associated with proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah (the "Case"), including legal fees, wages, benefits, taxes, US Trustee fees, license fees and the like.

For good and valuable consideration, receipt of which is hereby acknowledged, Guarantor agrees as follows:

1. **Definitions.** Terms defined in the singular shall have the same meaning when used in the plural and vice versa. As used herein, the term:

"**Indebtedness**" means the operational and administrative expenses of the Debtors, or either of them, incurred by the Debtors in connection with proceedings under Chapter 11 of Title 11, U.S.C., in the United States Bankruptcy Court for the District of Utah (the "Case"), including legal fees, wages, benefits, taxes, US Trustee fees, license fees and the like. The Indebtedness shall be due upon demand and payable monthly, subject only to verification by the Debtors that the related expense has been validly incurred or approved as an administrative expense of the Case. If not timely paid, after demand, the Indebtedness shall bear interest at the rate of 12% per annum until paid. Upon payment of the Indebtedness, Guarantor shall be subrogated to the claim or claims of the Debtors' creditors that are paid with funds provided by Guarantor to the Debtors.

2. **Guaranty.** Guarantor absolutely and unconditionally guarantees to Federal that he shall promptly, timely and fully perform, pay and discharge the Indebtedness.

3. **Guaranty Unconditional.** This Guaranty is an absolute and unconditional guarantee of payment and not of collectability.

4. **Agreement to Pay Attorneys' Fees.** Guarantor agrees to pay all collection costs, including reasonable attorneys' fees and legal expenses, incurred by Federal in enforcing this Guaranty, including, without limitation, all reasonable attorneys' fees and legal expenses incurred by Federal in the Case in connection with enforcing this Guaranty

5. **Waiver by Guarantor.** Guarantor expressly and absolutely, without affecting the liability of Guarantor hereunder:

   a. Waives notice of acceptance of this Guaranty, the offer of guarantee contemplated by this Guaranty, or any other notice which may be required relative to the acceptance of this Guaranty;

   b. Waives demand, protest, notice of dishonor or nonpayment or presentment for payment of any evidence of the Indebtedness;

   c. Waives notice of transactions which have occurred under or relating to or affecting this Guaranty;

   d. Waives notice of any adverse change in the condition, financial or otherwise, of Federal, or of any other fact which might materially increase Guarantor's risk, whether or not Federal has knowledge of the same;

19808394

e.    Waives any right to require Federal to (i) foreclose, proceed against, liquidate or exhaust any collateral, or (ii) exercise, pursue or enforce any right or remedy Federal may have against any other person or entity, or otherwise, prior to proceeding against Guarantor; and

f.    Waives any and all rights of subrogation, contribution or indemnification of any nature whatsoever, now existing or hereafter arising or created.

6.    Consent to Federal's Acts. Guarantor hereby authorizes and consents to Federal at any time and from time to time, without notice or further consent of Guarantor, doing the following and Guarantor agrees that the liability of Guarantor shall not be released or affected by:

a.    The taking or accepting, or the failure by Federal to take or accept, any collateral or guaranty for the Indebtedness;

b.    The modification, amendment, extension, renewal, replacement, or termination of the Indebtedness, to the granting of any other credit, and to the acceleration of maturity of the Indebtedness;

c.    Any complete or partial release, substitution, subordination, impairment, loss, compromise, or other modification of any collateral;

d.    The complete or partial release or substitution of any Guarantor;

e.    Any renewal, extension, modification, replacement, acceleration, consolidation, adjustment, indulgence, forbearance, waiver or compromise of the payment of any part or all of the Indebtedness;

f.    Any neglect, delay, omission, failure, or refusal of Federal to take or prosecute any action for the collection of the Indebtedness or any part thereof, including, without limitation, the failure of Federal to perfect any security interest in any collateral;

g.    Any increase or decrease in the rate of interest on the Indebtedness;

h.    Acceptance of any partial and/or late payments on the Indebtedness; and

i.    Federal exercising any and all rights and remedies available to Federal by law, at equity or by agreement, even if the exercise thereof may affect, modify, or eliminate Guarantor's right of subrogation against any other party.

7.    Guarantor Representations, Warranties and Covenants.

a.    Guarantor represents and warrants that all of Guarantor's financial statements heretofore delivered to Federal fully and fairly represent Guarantor's financial condition as of the date thereof. Guarantor represent and warrant that since the date of such financial statements, there has been no material adverse change in Guarantor's financial condition.

b.    Guarantor covenants that Guarantor shall provide Federal with such financial statements and reports as Federal may reasonably request and that such statements and reports shall fully and fairly represent Guarantor's financial condition.

8.    Term of Guaranty. This Guaranty shall remain in full force and effect until all Indebtedness has been fully paid. No termination of this Guaranty by Guarantor shall be effective.

2

19808394

9.   <u>Cumulative Rights</u>.   The rights and remedies herein conferred are cumulative and not exclusive of any other rights or remedies, and shall be in addition to every other right, power, and remedy that Federal may have, whether specifically granted herein, or hereafter existing at law, in equity, or by statute; and any and all such rights and remedies may be exercised from time to time and as often and in such order as Federal may deem expedient.   No delay or omission in the exercise or pursuance by Federal of any right, power, or remedy shall impair any such right, power, or remedy or shall be construed to be a waiver thereof.

10.   <u>Governing Law</u>.   This Guaranty shall be governed by and construed in accordance with the laws of the State of Utah.

11.   <u>Binding Effect</u>.   This Guaranty shall be binding and enforceable upon its execution and delivery to Federal.

12.   <u>Revival Clause</u>.   If the incurring of any debt or the payment of any money or transfer of property to Federal by or on behalf of Guarantor, or any other party, should for any reason subsequently be determined to be "voidable" or "avoidable" in whole or in part within the meaning of any state or federal law (collectively "voidable transfers"), including, without limitation, fraudulent conveyances or preferential transfers under the United States Bankruptcy Code or any other federal or state law, and Federal is required to repay or restore any voidable transfers or the amount or any portion thereof, or upon the advice of Federal's counsel is advised to do so, then, as to any such amount or property repaid or restored, including all reasonable costs, expenses, and attorneys' fees of Federal related thereto, the liability of Guarantor shall automatically be revived, reinstated and restored and shall exist as though the voidable transfers had never been made.

13.   <u>Severability and Interpretation</u>.   Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.   The headings in this Guaranty are inserted for convenience only and shall not be considered part of the Guaranty nor be used in its interpretation.   All references in this Guaranty to the singular shall be deemed to include the plural when the context so requires, and vice versa.   References in the collective or conjunctive shall also include the disjunctive unless the context otherwise clearly requires a different interpretation.

14.   <u>Continuing Agreement</u>.   All agreements, representations, warranties, and covenants made herein by Guarantor shall survive the execution and delivery of this Guaranty and shall continue in effect so long as the Indebtedness or any portion thereof is outstanding and unpaid.   All agreements, representations, warranties, and covenants made herein by Guarantor shall survive any bankruptcy proceedings.   This Guaranty shall bind the party making the same and its successors, assigns, heirs, executors, and personal representatives.   The death, insolvency, bankruptcy, disability, or lack of corporate power of Guarantor, or any other person or entity at any time will not affect this Guaranty.

15.   <u>Consent to Utah Jurisdiction, Exclusive Jurisdiction of Utah Courts, and Jury Waiver</u>.   Guarantor acknowledges that by execution and delivery of this Guaranty, Guarantor has transacted business in the State of Utah and Guarantor voluntarily submits to, consents to, and waives any defense to the jurisdiction of courts located in the State of Utah as to all matters relating to or arising from this Guaranty.   EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL, THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF UTAH SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES, ARISING UNDER OR RELATING TO THIS GUARANTY. NO LAWSUIT, PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS GUARANTY MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY FEDERAL.   GUARANTOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING,

3

CLAIM OR COUNTERCLAIM, WHETHER IN CONTRACT OR IN TORT AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY.

16.    Entire Agreement.  This Guaranty, together with the Security Agreement, constitutes the entire agreement between Federal and Guarantor concerning the subject matter hereof, and may not be altered or amended except by written agreement signed by Federal and Guarantor.   All other prior and contemporaneous agreements, arrangements, and understandings between the parties hereto as to the subject matter hereof are rescinded.

DATED as of the day first above written.

GUARANTOR:

Bentley J. Blum

4

19808394